UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Michael Gardner, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. |
| v. | ) | |
| | ) | |
| Generation Brands, LLC | ) | Judge, |
| A Delaware LLC | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S COMPLAINT AT LAW**

Michael Gardner, by his attorney Nicholas S. Lane, Esq., brings this complaint against his former employer, Generation Brands, LLC for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, seeking redress for Defendants failure to provide him with reasonable accommodations, and then terminating his employment on the basis of his disability and in retaliation for his attempt to assert his rights under the ADA when he requested a reasonable accommodation. In support of his claims, Plaintiff avers the following:

**Parties**

1. Plaintiff Michael Gardner is a 33 year old male currently residing at 4180 N. Marine Drive, Chicago, Illinois
2. Defendant Generation Brands, LLC is a Delaware LLC with its principal place of business 4700 Linder Avenue, Skokie, Illinois. Defendant holds itself out as offering "the most expansive and diverse selection of lighting in the industry," and claims over 600 employees.

**Jurisdiction and Venue**

3. This court has jurisdiction of this action under 28 U.S.C. §§ 1331

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that all of the claims and events giving rise to this action occurred in this district.
5. On July 12th, 2017 Plaintiff files a Charge of Discrimination on the basis of disability against Defendant with the EEOC. A true and correct copy of that charge is attached as Exhibit A.
6. On July 14th, 2017 the EEOC issued its Notice of Dismissal and Right to Sue in a court of competent jurisdiction, within 90 days of the Plaintiffs receipt of that Notice. A true and correct copy of that notice is attached as Exhibit B.
7. The Plaintiff has exhausted his administrative remedies under the ADA against the defendant.
8. Plaintiff files this Complaint under the ADA against Defendant within 90 days of his receipt of the EEOC Notice.

**Facts**

9. Plaintiff began working for Defendant on or about December 12, 2016.
10. Plaintiff most recently had attained the title of Associate Product Manager.
11. Plaintiff had since as far back as 2014 been diagnosed with several well known and treatable mental health conditions, including Bipolar 1 disorder, generalized anxiety disorder, and depression.
12. Plaintiff had a regular doctor and saw treaters for regular appointments for medication management.
13. Several of the medications Plaintiff was prescribed for his various conditions have well described side effect profiles in the medical literature, and though generally well tolerated sometimes require that covered employers provide reasonable accommodations when unexpected side effects strike, or when doses are adjusted, or

when a long term response sets in making the current working environment, schedule, or task performance requirements of the job untenable without accommodation.

14. Plaintiff was prescribed QUEtiapine Fumarate 100 MG Oral Tablet (Seroquel), a common drug used to treat Bipolar 1. One of the major side effects of this drug is extreme lethargy and exhaustion, and fatigue,

15. Plaintiff was also prescribed ALPRAZolam 0.5 MG Oral Tablet, an anxiolytic (anti anxiety) drug that can prevent crippling panic effects of the underlying condition, but can also make a patient sleepy.

16. Plaintiff was also prescribed Adderall XR 20 MG Oral Capsule Extended Release 24 Hour, which was intended to balance the lethargy experienced from the Seroquel, but can cause discomfort, akathisia, restlessness and anxiety

17. Plaintiff was a salaried employee. He would typically come into work around 9:30 because he was very groggy early in the mornings due to his medications.

18. Meetings in which he would participate occurred at 10:00 A.M. and Plainitff was under no instruction, rule or code of conduct that stated he had a specific start time.

19. On March 30th 2017, Plaintiff awoke feeling extreme effects of grogginess and lethargy from his prescribed Seroquel. He called into work and explained that he was not fit to operate a motor vehicle.

20. On March 31st, Plaintiff was confronted by his supervisor and HR about “excessive tardiness.” Plaintiff was given a “final warning” despite no prior warnings having been given. The “excessive tardiness” was proven by an unsupported simple document prepared by management which was nothing but a list of days the Plainitff had been “late.” Plaintiff pointed out that some of the days were covered by PTO – the company has a liberal policy allowing for personal time off for any reason. In addition, the Defendant had included all of the days he arrived at 9:30 as tardy days, despite the Plaintiff never having been informed of an official start time for his salaried position.

21. The next day, Plaintiff informed HR and Management, including his direct supervisor Libby

Gerberi of his mental health conditions and the medications he took in order to function and perform his work, which had not been a problem previously. Given the side effects of the Seroquel and the increasing anxiety caused in part by the commute, Plaintiff requested a reasonable accommodation in the form of flexible work hours, or possibly telecommuting from time to time. Plaintiff based this request on his reading of examples of accommodations suggested by the EEOC website to be reasonable for his very conditions. The conditions he suffers from – depression, anxiety, and bipolar interfere with the ability to perform daily activities of being alert and oriented, conversing with others, and engaging those around him in productive activity.

22. Defendant refused to grant any accommodation. Defendant informed plaintiff that they did not have to give him his requested accommodation because he didn't identify his disability at the time of his hiring. One of the Defendant's agents went on to state that she had a relative with Bipolar disorder and who takes Seroquel, and that she didn't suffer from lethargy or fatigue.

23. At the March 30th meeting, Plaintiff was told for the first time that he had an inflexible start time of 9:00 The document outlining the discipline went on to state that "Michael is never permitted to work from home. He is considered "working" only when he is present and working in the Skokie office."

24. Many other similarly situated employees of the Defendant enjoyed flexible work schedules and the ability to work from home. Plainitff was singled out and denied equal treatment on par with non-disabled employees when he was denied an accommodation others received but did not need.

25. Plaintiff was informed by his Manager Ms. Gerberi that she had seen to it that a colleague of the plaintiff was terminated because his anxiety disorder cause him to need to get up away from his desk for brief periods to collect himself. Management did not like the individual leaving his desk at all, and so he was refused an accommodation as well, and ultimately terminated.

26. On the evening of May 24th, Plaintiff had a plumbing issue in his apartment which he had to address late into the night/ As a result he was unable to take his medication at the prescribed time, instead taking it late. When he awoke the next morning he as very lethargic, groggy, and fatigued. Since March 30th, Plaintiff had been struggling without an accommodation but had managed to get

to work by the time the Defendant's had arbitrarily assigned him.

27. When Plaintiff returned to work on May 25th, he was summarily terminated.

**Count I - Violations of the ADA**

28. Plaintiff hereby re-alleges and incorporates by reference all of the allegations contained in paragraphs 1-27 as though fully set forth herein.

29. Under the Americans with Disabilities Act ("ADA"), it is unlawful for covered employers to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4.

30. Under the ADA, prohibited discrimination includes:

> b. "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5).

31. The " „reasonable accommodation‟ element of the [ADA] imposes a duty upon employers to engage in a flexible, interactive process with the employee needing accommodation so that, together, they might identify the employee‟s precise limitations and discuss accommodations which might enable the employee to continue working." *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998); *see also* 29 C.F.R. § 1630.2(o)(3).

32. Plaintiff was and is an individual with a disability within the meaning of the ADA at all times relevant to this lawsuit.

33. Plaintiff was and is substantially limited in the major life activities of awaking, communicating, concentrating, thinking, and interacting with others, as well as in the major bodily functions of the brain and neurological system.

34. Plaintiff has a record of a disability within the meaning of the ADA.

35. Defendant regarded Plaintiff as disabled within the meaning of the ADA.

36. Plaintiff was a qualified individual under the ADA because he could perform his essential job functions with or without reasonable accommodation. 42 U.S.C. § 12111(8).

37. Defendant was a covered employer under the ADA, as it employed more than fifteen employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. *Id.* § 12111(5).

38. Defendant discriminated against Plaintiff on the basis of his disability by terminating his employment on the basis of her disability.

39. Defendant discriminated against Plaintiff on the basis of his disability by failing to provide reasonable accommodations to Plaintiff.

40. Defendant discriminated against Plaintiff on the basis of his disability by failing to engage in an interactive process to consider possible reasonable accommodations for Plaintiff to perform her essential job functions.

41. Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the ADA.

42. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

## Jury Trial

Plaintiff demands a jury trial as to all issues triable by jury.

## Prayer for Relief

Plaintiff respectfully requests that this Court grant him the following relief:

A). A declaratory judgment that Defendant discriminated against Plaintiff in violation of Title I of the ADA;

B.). An injunction ordering Defendant to reinstate Plaintiff to his prior position of employment with Defendant, with such retroactive promotions and benefits as Plaintiff would have received had he not been terminated;

C.). An injunction ordering Defendant to provide Plaintiff reasonable accommodations necessary for Plaintiff to perform his essential job functions;

D.) An order requiring Defendant to undergo periodic ADA training;

E.) Back pay with interest;

F.) Payment of interest on all back pay recoverable;

G.) Compensatory and punitive damages;

H.) Attorneys fees and costs;

I.) Any other relief that the Court deems proper.

Respectfully Submitted,

___/s/ Nicholas Lane___

Nicholas S. Lane, Esq.
55 W. Wacker Drive, 14th Floor
Chicago, Illinois 60601
Telephone: 312-574-0209
Email: nicklane@lanelawchicago.com
ARDC #: 6296391